Mrs. Kenneth Evans, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued March 3, 1982, before President Judge
CRUMLISH, JR. and Judges BLATT and DOYLE, sitting as
a panel of three.

*Gerald M. Barr, Steckel & Stopp,* for petitioner.

*Phillip B. Rosenthal,* Assistant Counsel, with him
*Catherine Stewart,* Assistant Counsel, for respondent.

OPINION BY JUDGE BLATT, July 28, 1982:

In April 1977, Mrs. Kenneth Evans (petitioner) re-
quested legal representation from Lehigh Valley Legal
Services (Legal Services) in claiming a property tax
rebate[1] for the years 1972 and 1973. She was advised
by two attorneys on the staff of Legal Services, and
later by its Executive Director, that her claim was un-

---

[1] The petitioner sought a rebate pursuant to the Senior Citizens
Property Tax or Rent Rebate and Older Persons Inflation Needs Act
(Act), Act of March 11, 1971, P.L. 104, *as amended,* 72 P.S.
§§4751-1—4751-12.

timely[2] as well as without legal merit.[3] The Board of Directors affirmed the Executive Director's denial of legal representation and the Department of Public Welfare (DPW), after a hearing, denied her appeal from the Board's action. An appeal to this Court followed but, upon determining that a transcript of the hearing before the DPW was unavailable due to a malfunction of the tape recorder used at the hearing, we remanded the matter to the DPW for another hearing, after which the hearing examiner sustained the petitioner's appeal and ordered Legal Services to afford her legal representation. Shortly thereafter, the Director of the Office of Hearings and Appeals for the DPW reversed the order of the hearing examiner and one month later, following the petitioner's request for reconsideration, affirmed his order of reversal. This appeal followed.

---

[2] The Act, as originally promulgated, applied only to widows and required that a claim for a property tax rebate be filed with the Department of Revenue by the thirtieth of June of the year following the calendar year for which the rebate is sought. On December 5, 1973 the Act was amended to include widowers and granted them, as a newly created category, a one year retroactive time period within which to file claims for rebates of 1972 property taxes. The petitioner filed for the 1972 tax rebate on June 1, 1974, which was within the June 5, 1974 deadline for the grace period afforded widowers but not within the June 30, 1973 filing deadline for widows which applied to her. She did not file for the 1973 tax rebate until March 31, 1976, which was well beyond the applicable filing deadline of June 30, 1974. Both claims were, therefore, untimely filed.

[3] Legal Services correctly identified the positions which the petitioner sought to advance as being without merit. She wished to question the legal sufficiency of notice given by publication of the Act in the Pennsylvania Bulletin, and to attack the one year grace period afforded widowers under the Act as amended, within which they could retroactively file for their 1972 property tax rebate, as discriminatory against widows. Widows, however, had had the right to file for a rebate under the Act as originally written and the grace period merely put widowers on an equal footing with widows.

The gravamen of the petitioner's argument is that the DPW erred in interpreting Canon 2 of the Code of Professional Responsibility (Code), which provides that a lawyer should assist the legal profession in fulfilling its duty to make legal counsel available, and Ethical Consideration (E.C.) 2-29 of the Code, which appears thereunder:

> *When a lawyer is appointed by a court or requested by a bar association* to undertake representation of a person unable to obtain counsel, whether for financial or other reasons, he should not seek to be excused from undertaking the representation except for compelling reasons. Compelling reasons do not include such factors as the repugnance of the subject matter of the proceeding, the identity or position of a person involved in the case, the belief of the lawyer that the defendant in a criminal proceeding is guilty, or the belief of the lawyer regarding the merits of the civil case. (Emphasis added.)

It is clear that E.C. 2-29 does not speak to the ethical responsibility of Legal Services to represent those unable to obtain legal counsel otherwise; rather, it addresses the onus upon court-appointed attorneys or upon those requested by bar associations to represent persons who are without other legal-representational resources. The Legal Services' attorneys in the instant matter were neither appointed by a court nor requested by a bar association to undertake representation of the petitioner.

Moreover, Legal Services was not adverse to representing the petitioner but was only adverse to representing her in an untimely and non-meritorious action. Indeed, Legal Services represented the petitioner on all other matters on which she had sought legal assistance from it, including actions involving

delinquent taxes, a tax assessment reduction and other non-tax related matters. However, after researching the legal questions involved in her property tax rebate claim for 1972 and 1973, it declined to afford her representation in that matter because it determined that she had failed to meet the filing deadline set forth in Section 5 of the Act, 72 P.S. §4751-5; that, upon rejection of her untimely filed claim, she had failed to follow the appeal procedures set forth in Sections 11.1 through 11.3 of the Act, added by the Act of December 5, 1973, P.L. 384, *as amended*, 72 P.S. §§4751-11.1—4751-11.3; and, that there were no viable legal grounds present upon which to proceed.

Legal Services is contractually bound under its agreement with the Pennsylvania Legal Services Center to assess the measure of legal services to be afforded in each matter presented to it. Section 13 of their agreement provides, *inter alia*:

> Attorneys employed by or associated with the [Legal Services Program] shall, in exercise of their professional judgment, determine the extent of legal services to be provided in each case and shall have the right to refuse or discontinue the handling of a case, subject to the Code of Professional Responsibility and court approval where necessary and subject to service review procedures.

Having, in the exercise of their professional judgment, determined that the claim was untimely and that there was no legal basis upon which the petitioner could prevail, the Legal Services attorneys involved here exercised their contractually recognized right to refuse to handle the case. The Managing Attorney and the Executive Director researched, reveiwed and concurred in their determination and in so doing, were also justified under the applicable regulation. In addition, as the agreement provides, the Code governs the con-

duct of all attorneys in the Commonwealth, whether they are employed by Legal Services or function in a private capacity, and Canon 7 of the Code requires that a lawyer represent his client zealously within the bounds of the law. E.C. 7-4, appearing thereunder, however, cautions that, in acquitting this duty, "a lawyer is not justified in asserting a position in litigation that is frivolous," and E.C. 7-5 provides, *inter alia*, that a lawyer "may continue in the representation of his client even though his client has elected to pursue a course of conduct contrary to the advice of the lawyer so long as he does not thereby knowingly assist the client ... to take a frivolous legal position." Legal Services' attorneys, as attorneys practicing within the Commonwealth, therefore, have a responsibility to refrain from asserting fruitless and frivolous legal positions and, having determined that the petitioner's claim was without legal merit, they were obliged to refuse to advance it.

We, therefore, affirm the order of the DPW.

### ORDER

AND, Now, this 28th day of July, 1982, the order of the Department of Public Welfare in the above-captioned matter is affirmed.

Judge MENCER did not participate in the decision in this case.